# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| HANCOCK WHITNEY BANK, §<br>§<br>*Plaintiff,* §<br>v. §<br>§<br>KINGDOM HEALTH HOLDINGS, §<br>LLC, PARAMENO HEALTH §<br>SERVICES, LLC, AXIS §<br>PROFESSIONAL LABS, LLC, BETA §<br>BIOSCIENCES, LLC, LEANNAH §<br>INVESTMENT PARTNERS, LTD, §<br>d/b/a PRECISION LAB SERVICES, §<br>QUALITY METRIC PARTNERS, LLC, §<br>KJGRAY INVESTMENTS, LLC, §<br>TUCKER EQUITY PARTNERS, LLC, §<br>TREVOR FARR, and KEITH GRAY, §<br>§<br>*Defendants.* § | Civil Action No. 4:24-cv-864<br>Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion for Summary Judgment (the "Motion") (Dkt. #22) and Defendants' Motion for Clarification (Dkt. #34). Having considered the Motions and the relevant pleadings, the Court finds that the Motion for Summary Judgment should be **GRANTED** and that the Motion for Clarification is **DENIED** as moot.

## BACKGROUND

This is a breach of contract and foreclosure action. Plaintiff Hancock Whitney Bank seeks recovery against Defendants[1] based on several transactions (Dkt. #1 at pp. 10–12). On September

---

[1] The Defendants in the case are Kingdom Health Holdings, LLC ("Kingdom Health"), Parameno Health Services, LLC ("Parameno Health") Axis Professional Labs, LLC ("Axis") Beta BioSciences, LLC ("Beta BioSciences") Leannah Investment Partners, Ltd, d/b/a Precision Lab Services ("Leannah Investment"), Quality Metric Partners, LLC ("Quality Metric"), KJGray Investments, LLC ("KJGray"), Tucker Equity Partners, LLC ("Tucker Equity"), Trevor Farr ("Farr"), and Keith Gray ("Gray") (together, "Defendants").

26, 2024, Plaintiff filed suit (Dkt. #1). Defendants answered (Dkt. #13). On February 12, 2025, Plaintiff filed the Motion (Dkt. #22). Defendants moved to defer Court's ruling on the Motion (Dkt. #24; Dkt. #25). Plaintiff opposed that relief (Dkt. #26). The Court ordered that the case be stayed until the earlier of when Defendants filed a response to the Motion or October 20, 2025 (Dkt. #29; Dkt. #30). The Court explained that if Defendants failed to respond by October 20, 2025, the Court would rule on the Motion (Dkt. #29; Dkt. #30). Defendants filed no response.[2]

### The Transactions

*The First Note.* Plaintiff owns and holds a promissory note dated July 10, 2020 (the "First Note") (Dkt. #1-2). It is undisputed that the First Note obligated Kingdom Health, Axis, Beta BioSciences, Lennah Investment, and Quality Metrics (the "First Note Borrowers") to repay $2,500,000.00 to Plaintiff on or before the First Note's maturity date (Dkt. #1-2 at p. 1; Dkt. #13 at pp. 4–5). The First Note is payable in sixty monthly installments of $46,982.28, including accrued interest at the rate of 4.75% per annum (Dkt. #1-2 at p. 1). The first payment was due August 10, 2020, and the last payment was due on July 10, 2025 (Dkt. #1-2 at p. 1). The First Note also contains an acceleration clause, providing that interest shall accrue at the default rate of 18% per annum in the event of default (Dkt. #1-2 at p. 1).

---

[2] Defendants sought an extension to respond by November 3, 2025 (Dkt. #31). The Court did not rule on the extension until after November 3, 2025. Defendants did not respond on October 20, November 3, nor to this day. In their Motion for Clarification, Defendants claim that they failed to file a response because they believed doing so without leave would be inappropriate, and they request clarity about their deadline (Dkt. #34). No clarification is necessary, however, because the Court made clear in its order deferring consideration of the Motion that if Defendants failed to respond by October 20, 2025, the Court would take up the Motion (Dkt. #29; Dkt. #30). Moreover, in the Motion for Clarification, Defendants seek two extra weeks to respond, leaving the Court skeptical that the reason they have not responded is because they thought it would be improper without leave. The request instead suggests that Defendants have not prepared a response. The Court rejects Defendants' attempt to shift blame to the Court for failing to rule on an extension that Defendants were never entitled to in the first place. The Motion is ripe for ruling, and it has been since October 20, 2025. The Court's summary judgment ruling renders the Motion for Clarification moot, and it is denied as such.

***The First Security Agreement.*** The First Note is secured by a continuing and first priority security interest in substantially all of the First Note Borrowers' assets, now owned or later acquired (the "First Note Collateral," secured by the "First Security Agreement") (Dkt. #1-3). This security interest was perfected by the filing of UCC-1 Financing Statements (Dkt. #1-6).

***The First Guaranty.*** Defendants KJGray, Tucker Equity, Farr, and Gray (the "First Note Guarantors") guaranteed payment of the First Note (Dkt. #1-4 at pp. 1, 26, 29, 32) (the "First Note Guaranty Agreement"). The First Note Guaranty Agreement provides that the First Note Guarantors are jointly and severally liable for payment pursuant to the First Note (Dkt. #1-4 at p. 2). The First Note also states that Plaintiff need not exhaust other remedies before pursuing recovery from the First Note Guarantors (Dkt. #1-4 at p. 2).

***Payment Demand.*** The First Note Borrowers failed to pay all payments due under the First Note (Dkt. #22-18 at p. 2; Dkt. #1-1 at p. 3). Plaintiff made a demand for immediate payment of the First Note in full, giving the First Note Borrowers and First Note Guarantors the opportunity to cure their default (Dkt. #1-5). Despite the demand, no payment was made (Dkt. #1-1 at p. 3).

***The Second Note.*** Plaintiff owns and holds a promissory note dated April 27, 2023, in the original principal sum of $1,500,000.00 (Dkt. #1-7) (the "Second Note," and together with the First Note, the "Notes"). The Second Note was made solely by Kingdom Health (Dkt. #1-7 at p. 1). The Second Note is payable in regular monthly payments of all accrued unpaid interest due as of each payment date, beginning in May 27, 2023, until the maturity date of November 30, 2024 (Dkt. #1-7 at p. 1). On the maturity date, the Second Note provides, all outstanding principal plus all accrued unpaid interest is due (Dkt. #1-7 at p. 1). Interest on the Second Note accrues at a variable rate based on changes in an independent index, which is the rate of interest as published

by the Wall Street Journal as its prime rate (Dkt. #1-7 at p. 1). The Second Note also states that upon default, interest will accrue at the default rate of 18% per annum (Dkt. #1-7 at p. 1).

*The Second Security Agreement.* The Second Note is secured by all of Kingdom Health's assets, whether now owned, or hereafter acquired (the "Second Note Collateral," secured by the "Second Security Agreement") (Dkt. #1-8). This security interest was perfected by the filing of UCC-1 Financing Statements (Dkt. #1-11).

*The Second Guaranty.* Payment of the Second Note was guaranteed by Parameno Health, Axis, Beta BioSciences, Lennah Investment, Farr, and Gray (the "Second Note Guarantors") in a guaranty agreement dated April 27, 2023 (the "Second Guaranty Agreement") (Dkt. #1-9 at pp. 1, 3, 6, 9, 15, 18). The Second Guaranty Agreement provides that the Second Note Guarantors are jointly and severally liable for any debt owed under the Second Note (Dkt. #1-9).

*Payment Demand.* Kingdom Health failed to make payments on the Second Note after May 2024 (Dkt. #22-18 at p. 2). As of February 3, 2025, the outstanding amount under the Second Note includes $1,490,839.00 in principal, $84,491.23 in interest at the non-default and default rates, and $3,727.12 in late charges, for a total of $1,579,057.35 (Dkt. #22-18 at p. 2). Interest is accruing at the non-default rate of $352.01 per diem (Dkt. #22-18 at p. 2). Plaintiff made demand for immediate payment in full pursuant to the Second Note, giving Kingdom Health and the Second Note Guarantors an opportunity to cure (Dkt. #1-10). Despite the demand, Kingdom Health and the Second Note Guarantors failed to pay (Dkt. #1-1 at p. 3).

*The Purchasing Agreement.* Kingdom Health also entered into the Hancock Whitney Visa® Purchasing Card Agreement with Plaintiff, dated August 26, 2020 (the "Agreement") (Dkt. #1-12). The Agreement provides that Kingdom Health must pay Plaintiff in full each billing cycle for all

4

transactions made using any cards issued pursuant to the Agreement, along with all finance charges and other fees (Dkt. #1-12). Kingdom Health failed to make payments due under the Agreement (Dkt. #22-18 at p. 2). Specifically, the July 22, 2024 payment of $194,058.37 went unpaid, and no subsequent payments were made (Dkt. #22-18 at p. 2). As of February 3, 2025, the outstanding amount due under the Agreement is $203,764.99 in principal (Dkt. #22-18 at p. 2).

**The Agreement Guaranty.** Farr and Gray (the "Agreement Guarantors") guaranteed payment of any debt evidenced by the Agreement pursuant to the Continuing Guaranty dated July 19, 2020 (the "Agreement Guaranty") (Dkt. #1-13). The Agreement Guaranty provides that the Agreement Guarantors are jointly and severally liable for the any debt evidenced by the Agreement (Dkt. #1-13).

**Payment Demand.** On July 26, 2024, Plaintiff made demand for immediate payment in full pursuant to the Agreement, giving Kingdom Health and the Agreement Guarantors an opportunity to cure (Dkt. #1-14). Despite the demand, Kingdom Health and the Agreement Guarantors failed to pay (Dkt. #1-1 at p. 3).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must

resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider

all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Even though the Court deferred consideration of this Motion (like Defendants requested), they filed no response. Local Rule CV-7(d) provides as follows:

> **Response and Briefing**. The response and any briefing shall be contained in one document. A party opposing a motion shall file the response, any briefing and supporting documents within the time period prescribed by Subsection (e) of this rule. A response shall be accompanied by a proposed order conforming to the requirements of Subsection (a) of this rule. Briefing shall contain a concise statement of the reasons in opposition to the motion and a citation of authorities upon which the party relies. **A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion**.

(second emphasis added).

Defendants' failure to respond renders the facts in the Motion presumptively uncontroverted. After considering the Motion and the applicable law, the Court finds that Plaintiff is entitled to judgment as a matter of law.

**I.      Plaintiff is entitled to summary judgment on breach of contract and foreclosure.**

A breach of contract claim requires showing: "(1) a valid contract; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached . . . by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach." *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019).[3] Suits on promissory notes are typically well-suited for summary judgment. *Fed.*

---

[3] Texas substantive law governs this diversity case. *Petrohawk Properties, L.P. v. Chesapeake La., L.P.*, 689 F.3d 380, 387 (5th Cir. 2012) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 72 (1938)); *Kellog v. United States*, 54 F.3d 1194, 1201 (5th Cir. 1995).

*Deposit Ins. Corp. v. Cardinal Oil Well Servicing Co., Inc.*, 837 F.2d 1369, 1371 (5th Cir. 1988). "To prevail on a motion for summary judgment to enforce a promissory note, a plaintiff must establish that: (1) a note exists, (2) the plaintiff is the legal owner and holder of the note, (3) the defendant is the maker of the note, and (4) a certain balance remains due and owing on the note." *Suttles v. Thomas Bearden Co.*, 152 S.W.3d 607, 611 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (citing *Blankenship v. Robins*, 899 S.W.2d 236, 238 (Tex. App.—Houston [14th Dist.] 1994, no writ)).

Here, summary judgment is appropriate on the breach of contract claim because each element is established with uncontroverted evidence. After considering the evidence and applicable law, the Court finds that no genuine issue of material fact exists as to the validity of the Notes, the First Guaranty Agreement, the Second Guaranty Agreement, the Agreement, and the Agreement Guaranty. No dispute exists as to whether Plaintiff performed its obligations, or whether Defendants failed to perform theirs. Nor is there a genuine issue as to whether Plaintiff is the present owner and holder of the Notes, or about whether Defendants (when applicable) are the makers of the Notes, or about whether Defendants' breach caused damages. Further, Plaintiff has established a certain balance remains due and owing.

Moreover, "[u]nder Texas law, lenders have a substantive right to elect judicial or nonjudicial foreclosure in the event of a default . . . ." *Douglas v. NCNB Tex. Nat. Bank*, 979 F.2d 1128, 1130 (5th Cir. 1992). A court may order judicial foreclosure upon proof "establishing the debt and fixing the lien." *Maldonado v. CitiMortgage, Inc.*, 676 Fed. App'x 282, 284 (5th Cir. 2017) (per curiam) (citing *Bonilla v. Roberson*, 918 S.W.2d 17, 21 (Tex. App.—Corpus Christi–Edinburg 1996, no writ)). Proof of default—and that the property subject to foreclosure is the same property

subject to the lien—is also required. *Id.* (citing *Rinard v. Bank of Am.*, 349 S.W.3d 148, 152 (Tex. App.—El Paso 2011, no pet.).

Summary judgment on the foreclosure claim is also appropriate. The uncontroverted evidence establishes Defendants' default, which has not been cured. The obligations evidenced by the Notes are secured by a perfected security interest in the First Note Collateral and Second Note Collateral. Plaintiff is entitled to foreclose on its security interest on the First Note Collateral and Second Note Collateral, in accordance with Texas and federal law as and the terms of the First Note, the First Security Agreement, the Second Note, and the Second Security Agreement.

## II. Plaintiff is entitled to attorneys' fees.

Plaintiff seeks attorneys' fees (Dkt. #22 at p. 15). Each transaction contains a provision permitting recovery of attorneys' fees.[4] Moreover, Chapter 38 of the Texas Civil Practice & Remedies Code provides for attorneys' fee recovery for the prevailing party in a breach of contract action. TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8). Under § 38.001, an attorneys' fee award is mandatory, but the amount is discretionary. *Fluorine on Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 866 (5th Cir. 2004).

One method of calculating reasonable attorneys' fees under § 38.001 is the "lodestar" method. *See, e.g., McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008). Under Texas law, the "party applying for an award of attorney's fees under the lodestar method bears the burden of documenting the hours expended on the litigation and the value of those hours." *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). To calculate reasonable attorney's fees under the

---

[4]  (Dkt. #1-2 at p. 4; Dkt. #1-3 at p. 1; Dkt. #1-4 at p. 5; Dkt. #1-7 at p. 2; Dkt. #1-9 at pp. 2, 5, 8, 11, 14, 17; Dkt. #1-12 at p. 5; Dkt. #1-13 at p. 1).

lodestar method, courts must first establish a lodestar fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

Texas courts determine reasonableness by applying the *Arthur Andersen* factors. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). These factors are: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the expertise, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Id.* "[E]vidence of each of the *Andersen* factors is not required to support an award of attorney's fees." *Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 706 (Tex. App.—Dallas 2008, no pet.). "The court can also look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 318 (Tex. App.—Dallas 2009, pet. denied).

Once the court determines the lodestar, it may accept the lodestar or adjust it up or down. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). "The lodestar method aims to provide a relatively objective measure of attorney's fees," and, to ensure this, trial courts "should obtain sufficient information to make a meaningful evaluation of the application for attorney's

fees." *El Apple I*, 370 S.W.3d at 762. In this case, Plaintiff has provided a detailed affidavit from Mr. Lim on the issue (Dkt. #22-19).  After considering the uncontroverted evidence and the relevant factors, the Court finds Plaintiff is entitled to recover its reasonable attorneys' fees, the total amount being $138,536.44.

## CONCLUSION[5]

It is therefore **ORDERED** that Plaintiff's Motion for Summary Judgment (Dkt. #22) is hereby **GRANTED**. Defendants' Motion for Clarification (Dkt. #34) is **DENIED** as moot. It is further

**ORDERED** that judgment is entered in favor of Plaintiff and against Defendants Kingdom Health, Farr, and Gray for $2,460,957.59, which includes the full principal amount under the First Note, Second Note, and Agreement, plus accrued and unpaid interest, late fees, finance charges, and other charges as of the date of entry of this judgment, plus interest at the rate of $436.87 per diem until this judgment is paid in full; it is further

**ORDERED** that judgment is entered in favor of Plaintiff and against Defendants Quality Metric, KJGray, and Tucker Equity for $678,135.25, which includes the full principal amount under the First Note, plus accrued and unpaid interest, late fees, and other charges as of the date of entry of this judgment, plus interest at the rate of $84.86 per diem until this judgment is paid in full; it is further

**ORDERED** that judgment is entered in favor of Plaintiff against all Defendants for all costs of this action and reasonable attorney's fees, which total $138,536.44; it is further

---

[5] Capitalized terms in this Section are given the meaning ascribed to them in Plaintiff's Motion for Summary Judgment (Dkt. #22).

**ORDERED** that Plaintiff's security interests in the First Note Collateral and Second Note Collateral, as granted by the First Security Agreements and the Second Security Agreement, respectively, and perfected by the associated UCC-1 Financing Statements are valid and enforceable; it is further

**ORDERED** that Plaintiff is authorized to proceed with judicial foreclosure sale of the First Note Collateral and Second Note Collateral, and an order of sale issue from this Court to any federal marshal directing him or her to seize and sell the First Note Collateral and the Second Note Collateral, as under execution in satisfaction of the judgment; it is further

**ORDERED** that Plaintiff is authorized to credit bid toward the purchase of the First Note Collateral and the Second Note Collateral that may not exceed the amounts awarded in the judgment, except that Plaintiff may bid a lesser amount at its sole and absolute discretion; and it is further

**ORDERED** that after judgment is rendered and the First Note Collateral and the Second Note Collateral are seized and sold, out of the proceeds of said sale, Plaintiff shall be paid with preference to all others and said proceeds shall be applied toward the satisfaction and payment of the liens and the costs of this action.

Plaintiff is instructed to submit to the Court a proposed Final Judgment within seven calendar days of entry of this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

**SIGNED this 21st day of November, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE